## SUPREME COURT.

THE MANUFACTURERS' BANK OF TROY agt. THE MAYOR, RECORDER, ALDERMEN AND COMMONALTY OF THE CITY OF TROY.

By the system of *taxation* under the provisions of the statutes applicable to the county of Rensselaer and the city of Troy, a *banking corporation* located in that city, may be *exempt from taxation* as respects the county tax, under the law of 1853, (*Laws of* 1853, *chap.* 654, § 1, *amending* § 9 *of the former act,*) which entitles a bank to commutation, by paying a sum equal to five per cent. on their net annual income or profits, or to an exemption in case of no net profits or clear income at all; and yet be liable to a *city tax* on their *personal property,* although, by the provisions of the above law, *they have sworn they have none* liable to taxation, by reason of which they are exempt from the county tax.

*Albany General Term, May,* 1859.

WRIGHT, GOULD and HOGEBOOM, *Justices.*

THIS is an appeal by the plaintiff from a judgment rendered in favor of the defendants, pursuant to the directions of Mr. Justice GOULD, on the 5th day of November, 1858, for the sum of $85.06, being the amount of their costs in the action. The cause was tried before the said justice, without a jury, at the Rensselaer circuit, on the 16th of October, 1858. The plaintiff was a banking corporation in the city of Troy, and was assessed, in the year 1855, the sum of $187,873 upon its capital stock, as the personal pro-

perty of said bank. The assessment roll containing this assessment was duly returned to the board of supervisors of the county of Rensselaer. At the annual meeting of said board, in 1855, and within two days of the commencement of their session, the bank presented to said board a petition, asking exemption from taxation under chap. 654 of the Session Laws of 1855, accompanying the petition with an affidavit that the plaintiff had not been, during the preceding year, in the receipt of net annual profits or clear income equal to five per cent. of the capital stock of said bank, paid in, or secured to be paid in, nor of any net profits or clear income at all.

The act of the legislature above referred to, provides that if any incorporated company named in the assessment roll should, through its proper officer, show to the satisfaction of the board of supervisors, at their annual meeting, within two days of its commencement, by the affidavit of such officer, that the company has not been, during the preceding year, in the receipt of net annual profits or clear income equal to five per cent. of its capital stock paid in, or secured to be paid in, after deducting from the amount of their capital stock the assessed value of their real estate, such company shall be entitled to commute for their taxes on such capital stock, by paying directly to the treasurer of the county, a sum equal to five per cent. on such net annual profits or clear income, and also the amount of the taxes on their real estate.

The board of supervisors referred said petition and affidavit to a committee, who reported in favor of exempting the plaintiff from taxation on personal property, pursuant to their petition ; and the board subsequently resolved that the committee having charge of this subject, be authorized to expunge the assessment of The Manufacturers' Bank from said assessment roll. It was accordingly done. No tax was extended by the board opposite to said assessment, nor otherwise laid upon the capital stock. The real

estate of the bank was duly assessed, and the tax thereon paid to the chamberlain.

The defendants proved the various acts of the legislature, having reference to the levy and collection of taxes in the city of Troy, and that under and in the manner required by said acts, the defendants, on the 4th of October, 1855, imposed a city tax for that year, to the amount of $2,250.67 on the capital stock of the plaintiff, and afterwards issued their warrant for the collection thereof, in the usual form. Under this warrant a levy was made under the direction of the defendants, by an officer, who seized and took of the plaintiff's property a sum sufficient to pay said tax, and the expenses of collection, and the proceeds thereof were paid to the chamberlain of the city. For the amount thus levied and collected, the plaintiff instituted this suit. The plaintiff contended that proof of the foregoing facts entitled it to exemption from the payment of the *city* as well as the *county* and *state* taxes. The defendants insisted upon the contrary, and having duly objected to the proof introduced as to the action of the board of supervisors upon the petition and affidavit of the plaintiff, as irrelevant and immaterial, moved to strike out such proof. The justice granted the motion, and the plaintiff excepted. The justice then decided that the defendant was entitled to judgment, and to this the plaintiff excepted. Judgment having been rendered accordingly, the plaintiff appealed to the general term.

DAVID L. SEYMOUR and W. A. BEACH, *for plaintiff.*
JOHN B. GALE and MARTIN I. TOWNSEND, *for def'ts.*

By the court, HOGEBOOM, Justice. In this case, I have come to the following conclusions :

1. The petition and accompanying affidavit presented by the plaintiff to the board of supervisors, on the 3d of October, 1855, entitled it to commutation or exemption, under

the law of 1853. (*Laws of* 1853, *chap.* 654, § 1, *amending* § 9 *of the former act.*)

The affidavit was made by the proper officer—covered the contingency named in the act, and showed that the bank had not been in the receipt of any net annual profits or clear income, and of course not in the receipt of any equal to five per cent. of the capital stock paid in, or secured to be paid in, after deducting from such capital stock the assessed value of its real estate. This, by the terms of the act, entitled it to commutation, by paying a sum equal to five per cent. on such net annual profits or clear income, in addition to the assessment for taxes on the real estate. As there were no net profits or clear income at all, commutation was equivalent to total exemption.

2. The resolution and action of the board of supervisors upon this petition and affidavit, though slightly informal, sufficiently indicated their satisfaction that the bank had come within the provision above referred to, entitling it to commutation or exemption. The law pointed out no mode in which the supervisors should declare or manifest their satisfaction. When, therefore, they resolved that the assessment upon the capital stock of this bank should be expunged from the assessment roll, and it was accordingly done, we must assume that they extended no tax thereon, or if they did so, that it, like the assessment, was expunged from the roll, and they thereby virtually, and indeed in the most convincing manner, expressed themselves satisfied with the truth of the matters stated and shown by the bank. It would be exacting an unnecessary formality, to require a more strict compliance with the terms of the act.

3. The commutation or exemption in question was intended by the law to be confined to such taxes as the board of supervisors had a right to impose, review or collect.

We cannot suppose that the supervisors were intended to be clothed with power to abate or receive commutation for taxes over which they had no jurisdiction—which they

did not create or impose—and as to which they were not entrusted with any supervisory power. At least we may infer that, if the law designed to confide to them, as a distinct body from the taxing power, the authority to supervise the taxes imposed by another tribunal, it would say so in express terms, or provide some mode by which its decision on the question of commutation should be certified to the body imposing the tax. As nothing of this kind appears in the law, we may reasonably infer that the jurisdiction of the supervisors on the subject of commutation of taxes, was designed to be limited to those taxes which they imposed, and which were contained in the assessment roll over which they had control and the power of correction.

4. The city taxes of the city of Troy, in distinction from the state and county taxes imposed upon the property of that city, do not come under the supervision or control of the board of supervisors, nor had they any power to lessen, increase, or in any way modify or remit the same, or receive any commutation therefor.

Troy, like some other cities in the state, has a system for the collection of taxes somewhat peculiar, and differing in many respects from the provisions of the general law. There are some features common to both systems. The original assessment roll is made by the same officers—the assessors—both for the city taxes, and the state and county taxes. When completed, it is delivered to the chamberlain, who is required to copy the same, and make out the city tax as soon as levied (imposed) by the common council, and then deliver the assessment roll to the order of the supervisors of the assessment districts, on or before the 15th day of October. This phraseology is not altogether unambiguous; but I understand it to mean that the chamberlain is to make a *copy* of the assessment roll, and to make out the city tax on the *copy* thus made, and then to deliver the *original* assessment roll to the supervisors; and such I understand to have been the practice under this act.

Thus two assessment rolls come into existence, upon one of which the city taxes are extended by the city officers, and upon the other of which the state and county taxes are extended by county officers, to wit: by the board of supervisors as a body. This idea is further confirmed by the *heading* of the different *articles* of this statute. ; one of which, (article second,) from which the above provision is extracted, is denominated " Of the mode of collecting city taxes ;" and another, (article third,) " Of the mode of collecting state and county taxes." Each of these articles contains the provisions of a distinct and complete system for the collection of the taxes. By article second, the city roll, after the taxes are extended thereon, is to have annexed to it a warrant under the hand of the mayor, and seal of the city, commanding the collection of the tax. The chamberlain is directed to collect the same, after public notice, before the last of January then next, and in the meantime to receive for the collection thereof, different per centages, according to the promptness with which the payments are made by the persons taxed. For the collection of such portion of the taxes as remains unpaid by the first of February, the chamberlain is to issue his warrant to the sheriff, or a constable or marshal, commanding a levy and sale of the property of the persons taxed. Somewhat similar, but not altogether identical, proceedings are required to be taken for the collection of the county taxes; but the warrant comes from the supervisors, and the times and modes of enforcing payment are slightly different.

There are other distinctions between the city system and the county system for the collection of taxes. The fiscal year of the first is from March to March; of the other, from October to October. The taxes of the one are payable, and the warrant issued to the chamberlain therefor, by the 15th of October ; those of the other by the 15th of December. It is quite possible that the city taxes, or a portion thereof, may be collected before the actual meeting

of the board which makes the commutation in question. Again : the commutation, when authorized to be made, is to be paid to the treasurer of the county, and no provision is made for the payment over to the city authorities of any portion of the commutation money, or of its equitable distribution between the city and the county taxes. Were they upon the same roll, there might be some reason for saying that a general commutation upon the property taxed ought to be ratably divided between the city and the county taxes for that property, according to their respective amounts.

It is objected to this view of the case that, after all, these several acts are part of one general system of taxation, and that the right of commutation should be regarded as applicable to all taxes, inasmuch as they have one general object in view—the support of the government ; and that the reason for commutation applies in principle to each class of taxes alike, and that the terms of the act allowing commutation, are unrestricted, and comprehensive enough to embrace every species of tax. These considerations are not without force ; but the difficulty, if not impossibility, of making the commutation in question applicable to the city taxes, and the improbability that where there are two distinct bodies vested with the power of taxation upon the same property, but for different purposes, that the one should be regarded as clothed with the power of remitting or diminishing the taxes imposed by the other, and the confusion which would thence arise, together with the other considerations before adverted to, have led my mind to the conclusion that the legislature intended to discriminate between the two cases, or else that the provision for commutation was inadvertently omitted from the system devised for the collection of city taxes. In either view, the plaintiff must fail.

An argument in favor of the plaintiff is also supposed to be derived from the allegation that the corrected assess-

ment rolls, as finally perfected by the board of supervisors, form also the basis of taxation for the city taxes. But I think the allegation is not founded upon fact, or a proper apprehension of the provisions of the law. I do not understand that the *corrected* assessment rolls are those upon which the city taxes are extended, but that they are the *copies* of the *original* assessment rolls delivered by the assessors to the chamberlain. Hence the argument fails.

If these views are correct, they dispose of this case. The judge at the circuit was right in rejecting the evidence offered, inasmuch as it constituted no defence to the action, and also in determining that the defendants were entitled to judgment.

The judgment of the circuit court must be affirmed.